**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| **ASHLEY JOHNSON and** ) | |
| **JILL UPDIKE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action File No:** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **PHOEBE PUTNEY HEALTH** ) | |
| **SYSTEM INC.,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiffs Ashley Johnson ("Ms. Johnson" or "Plaintiff Johnson") and Jill Updike ("Ms. Updike" or "Plaintiff Updike") (collectively referred to as "Plaintiffs") bring this civil action for relief and damages against Defendant Phoebe Putney Health System Inc. ("Phoebe Putney", "Defendant" or "the Company") based on the following allegations and causes of action.

## NATURE OF THE ACTION

1.     This action to correct unlawful employment practices by Defendant Phoebe Putney arises under the Americans with Disabilities Act of 1990 ("ADA"),

as amended, 42 U.S.C.A. § 12101 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et. seq.*  Plaintiff Johnson alleges that she was denied accommodations and terminated by Defendant based on her ADA-qualifying medical disabilities in the form of clinical depression and anxiety, and that Defendant interfered with the exercise of her lawful rights under the FMLA.  Plaintiffs Johnson and Updike both allege that they were subjected to retaliation for engaging in protected activities under the ADA and the FMLA. Plaintiffs seek economic damages including back pay, front pay, and lost benefits. Additionally, Plaintiffs seek noneconomic compensatory damages and punitive damages under the ADA.  Plaintiffs also petition the court for their attorneys' fees and costs of litigation, as well as injunctive and declaratory relief as appropriate.

## **THE PARTIES**

2.     Plaintiff Johnson is a resident of the state of Georgia, and during the time of the events alleged in this complaint, she was employed remotely by Phoebe Putney's corporate headquarters as a compensation analyst.

3.     Ms. Johnson has a record of ADA-qualifying medical disabilities, i.e., clinical depression and anxiety, that cause her to be substantially limited in one or more major life activities.

4.     During the events alleged herein, Ms. Johnson was an eligible employee within the meaning of the FMLA.  She had been employed by Phoebe Putney for more than 12 months and worked more than 1,250 hours in the 12 months preceding the time in which she exercised her right to request leave under the FMLA.  29 U.S.C.A. § 2611(2)(A)(i)-(ii).

5.     Plaintiff Updike is a resident of the state of Maryland, and during the time of the events alleged in this complaint, she was remotely employed by Phoebe Putney as an Assistant Vice President/Corporate Director, Total Rewards.

6.     Phoebe Putney is a Georgia-based nonprofit company that operates hospitals and health care facilities throughout southwest Georgia.  The Company maintains its corporate headquarters in Albany, Georgia, in Dougherty County.

7.     Phoebe Putney is an employer subject to coverage under the ADA, in that it is engaged in an industry affecting commerce and had more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.  42 U.S.C.A. § 12111(5)(A).

8.     Phoebe Putney is an employer as defined by the FMLA, in that it is engaged in an industry affecting commerce who had more than 50 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.   29 U.S.C.A. § 2611(4)(A)(i).

## PERSONAL JURISDICTION

9.    Phoebe Putney may be served with proper process through its registered agent on record with the Georgia Secretary of State: Dawn G. Benson, 417 3rd Ave., Albany, GA 31701.

## SUBJECT-MATTER JURISDICTION AND VENUE

10.    Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§1331 and 1343.

11.    Venue is proper in this district and division under 28 U.S.C.A. §1391(b)(1), as Defendant resides in and conducts business in this district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.    Ms. Johnson filed a charge of disability-based discrimination against Phoebe Putney with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 415-2022-03516, received on March 7, 2022.  A copy is attached as Exhibit A.

13.    Ms. Updike filed a charge of disability-based discrimination against Phoebe Putney with the EEOC, Charge No. 410-2022-03517, received on March 7, 2022.  A copy is attached as Exhibit B.

14.    Ms. Johnson subsequently received a right-to-sue letter from the EEOC on April 8, 2022.  A copy is attached as Exhibit C.

15.    Ms. Updike subsequently received a right-to-sue letter from the EEOC on April 8, 2022.  A copy is attached as Exhibit D.

16.    Ms. Johnson and Ms. Updike timely file this action within 90 days of receiving their respective right-to-sue letters.

17.    All administrative remedies have been satisfied prior to the filing of this civil action.

## FACTUAL ALLEGATIONS

18.    Phoebe Putney is a comprehensive health care delivery network that services over 500,000 persons in Southwest Georgia.  Its corporate office is headquartered in Albany, Georgia.

19.    In January 2018, Ashley Johnson was hired by Phoebe Putney's corporate office and advanced to the position of an exempt, salaried compensation analyst.  She performed her roles effectively, and received positive performance feedback during her first two and a half years with the Company.

20.    Ms. Johnson's job shifted to remote work after the emergence of the COVID-19 pandemic in the spring of 2020.  As the pandemic took hold and an

economic downturn ensued, Phoebe Putney reduced its staff, and employees like Ms. Johnson experienced a surge in their volume of work.

21.    Like numerous employees in every sector, Ms. Johnson faced profound emotional stress from the dramatic changes in her work life, the pandemic lockdowns, and the persistent threat to life from the coronavirus. She sought mental health counseling and by the fall of 2020, she was diagnosed with clinical depression and anxiety.

22.    At the recommendation of her therapist, in late 2020, Ms. Johnson shared her mental health struggles and their impact with her direct supervisor, Jill Updike, who was Phoebe Putney's Corporate Director, Total Rewards.

23.    Ms. Updike's responsibilities included management of employee benefits and supervision of various corporate office personnel, including the compensation team. Her 20-plus-year career as a corporate management professional also encompassed roles related to the broader human resources process, including workplace accommodations for medical conditions.

24.    The EEOC's workplace guidance specifically recognizes depression and anxiety as ADA-qualifying conditions. *See Depression, PTSD, & Other Mental Health Conditions in the Workplace: Your Legal Rights*, EEOC-NVTA-2016-11.

25.     Ms. Updike and Ms. Johnson engaged in discussions regarding Ms. Johnson's diagnosis and her need for workplace accommodations based on her mental health condition.  The ADA requires exactly such an interactive process when an employee discloses an ADA-qualifying condition and seeks accommodations that would enable her to continue to perform her job.

26.     Ms. Updike approved as an accommodation what is commonly referred to as a "flextime" work schedule, in which Ms. Johnson could adjust the timing of her work hours to build in downtime space in order to reduce stress within her workday.  Under the ADA, a modified work schedule is identified as a "reasonable accommodation."  42 U.S.C.A. §12111(9)(B).

27.     Ms. Johnson's scheduling accommodation fully aligned with the expectations of salaried exempt personnel.  Ms. Updike continued to maintain regular and appropriate monitoring of Ms. Johnson's delivery of assignments and compliance with internal deadlines.

28.     During the remainder of the time that Ms. Updike exercised direct supervision of the compensation team, she also granted a flextime scheduling accommodation to at least one other employee who faced chronic health issues.

29.     In August 2021, Ms. Updike transferred supervision of the compensation team to Melinda Wilson ("Wilson").  Wilson immediately expressed

concerns over the availability of flextime scheduling to employees. Although Wilson was apprised that these accommodations were authorized to comply with ADA standards, she persisted in directing Ms. Johnson and the other flextime employee to revert to "regular" working hours.

30.     During the fall of 2021, Ms. Johnson struggled with the forced change in her routine and her level of anxiety and depression worsened. She was also unable to maintain the course of care her mental health provider recommended.

31.     The increased strain caused Ms. Johnson to experience a panic attack during her workday in early October 2021. On her doctor's advice, Ms. Johnson applied for one month of leave under the FMLA in order to seek additional treatment and therapy.

32.     Immediately prior to Ms. Johnson's leave beginning in late October 2021, Wilson directly told Ms. Johnson that her job might not be waiting for her once she returned from FMLA leave, that the timing of the leave was a burden to the compensation team, and that Ms. Johnson's mental health condition was negatively affecting her job performance.

33.     In a virtual staff call later the same day that Wilson threatened Ms. Johnson with termination, Wilson was asked by a team member to elaborate on an emerging issue, the protocol for transitioning employees from full-time to part-time

status.   Wilson answered by saying that one specific example of such a reclassification would be if a compensation analyst were struggling with her job and took medical time off to deal with the stress, and the company decided to demote the employee to part time upon her return.

34.    Ms. Johnson was shaken by the comments from Wilson, which she perceived as intimidation and as a threat to her employment.  Ms. Johnson sought out Ms. Updike for guidance and was told by Ms. Updike that the best recourse would be to report the exchange to the Company's department of human resources.

35.    Ms. Johnson followed the advice Ms. Updike gave her and lodged a formal HR complaint against Wilson, in which Ms. Johnson specifically reported that her condition and forthcoming leave caused hostility and recriminations from Wilson.

36.    While Ms. Johnson was on her FMLA leave, within three weeks after Ms. Johnson's complaint was filed with HR, Ms. Updike was notified by Phoebe Putney's compliance department that an internal investigation had been lodged regarding employee productivity and time keeping within the compensation department.

37.    Ms. Updike was directly questioned about only one employee, Ms. Johnson.   Ms. Updike informed the compliance investigators that based on her

observations and monitoring, Ms. Johnson had performed her job consistent with her obligations as a salaried, exempt employee.

38.    Ms. Updike offered during her meeting with the compliance team to provide them with contemporaneous documentation of Ms. Johnson's work output, but she was not asked, then or later, to make the information available to the investigators.

39.    Prior to Ms. Johnson's HR complaint regarding her new supervisor's hostility to her medical condition and FMLA leave, Ms. Updike had never been alerted to any concerns about Ms. Johnson's attendance, time keeping, or adherence to her work obligations.

40.    Upon Ms. Johnson's return to work on November 29, 2021, she was promptly questioned by the compliance department about whether she had taken leave at any point prior to the past month, without any notice that she was under investigation or that her work schedule was being scrutinized.

41.    Within two weeks, on or about December 13, 2021, Ms. Johnson was formally notified by the Chief Human Resources Officer, Tony Welch ("Welch"), that the Company had been investigating her for what he described as "stealing time," that her guilt had been established, and that she was being immediately

terminated.  Welch presented Johnson with no actual evidence or proof in support of these claims.

42.    In effect, Phoebe Putney conducted an "investigation" without ever providing the subject of the inquiry an opportunity to directly answer the charges, and without endeavoring to review documentation her previous supervisor offered to share.

43.    On December 15, 2021, Welch confronted Ms. Updike with information that she had also been "implicated" in the investigation of Ms. Johnson's attendance.  As with Ms. Johnson, Welch provided Ms. Updike with no documentation of wrongdoing or time theft.

44.    Ms. Updike reiterated her previous defense of Ms. Johnson's compliance with Phoebe Putney's time obligations and reminded Welch of the Company's legal obligations under the ADA to implement accommodations to which Ms. Johnson was lawfully entitled.

45.    The next day, Welch let Ms. Updike know that she had two choices: resign or face termination for what would be labeled "gross misconduct."

46.    Phoebe Putney's actions regarding Ms. Johnson and Ms. Updike did not comply with internal company guidelines in multiple ways.

47.    For example, the failure to afford Ms. Johnson or Ms. Updike an opportunity to confront or examine the purported evidence of wrongdoing is inconsistent with the Company's protocol for internal investigations.

48.    Welch's threat to tarnish Ms. Updike's professional standing by making a finding of "gross misconduct" if she declined to resign is similarly at odds with the Company's policies.  As Welch fully understood, under Phoebe Putney's internal policies, the very offer of a resignation option means the company possesses no evidence of gross misconduct.

49.    Phoebe Putney further deviated from its ordinary disciplinary practices by executing two terminations, Ms. Johnson's and Ms. Updike's, without informing its corporate director of human resources, Cassandra Haynes, in advance or including her in the decision-making process.

50.    Ms. Updike involuntarily resigned her position on December 31, 2021.

51.    Phoebe Putney's launch of an investigation of Ms. Johnson within a month of her initiation of an HR complaint alleging discrimination based on her ADA-qualifying medical condition and on her exercise of statutorily protected rights under the FMLA constitutes unlawful retaliation.

52.     Phoebe Putney's direction to Ms. Updike to resign or face both termination and a stigmatizing designation in her personnel file of gross misconduct constitutes a materially adverse employment action in retaliation for her opposition to a retaliatory investigation of Ms. Johnson and for her role in facilitating ADA-based accommodations for Ms. Johnson.

## CAUSES OF ACTION
## COUNT I
### Plaintiff Ashley Johnson
### (Retaliation in violation of the ADA)

53.     Plaintiff Johnson incorporates by reference the preceding paragraphs 1–52 of this complaint as though set forth fully and separately herein.

54.     Plaintiff Johnson engaged in protected activity in the form of an internal complaint of disability-based discrimination by a corporate official employed by Defendant.

55.     Defendant retaliated against Plaintiff Johnson for engaging in protected activity by subjecting her to materially adverse job actions that well might have dissuaded a reasonable person from making or supporting a charge of discrimination, including but not limited to an unwarranted internal investigation of misconduct; failure to follow company policies and protocols regarding the

investigative and termination process; and her eventual termination in violation of 42 U.S.C.A. § 12203(a).

56.    As a result of Defendant's retaliatory conduct, Plaintiff Johnson has suffered monetary damages, including but not limited to back pay, front pay, and loss of benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

57.    Higher-level management officials employed by Defendant acted with malice or reckless indifference to Plaintiff Johnson's federally protected rights under the ADA, and she is therefore entitled to recover punitive damages.

## COUNT II
### Plaintiff Ashley Johnson
### (Discrimination/failure to accommodate under the ADA)

58.    Plaintiff Johnson incorporates by reference all the preceding paragraphs of this complaint, 1–57, as though set forth fully and separately herein.

59.    Defendant is a covered entity subject to the requirements of the ADA.

60.    At all times relevant, Plaintiff Johnson was an individual with a record of disabilities—anxiety and depression—that are recognized as ADA-qualifying medical conditions, 42 U.S.C.A. § 12102 (1)(A)(B).

61.     Plaintiff Johnson was regarded by Defendant as an individual with a disability as defined by the ADA.  42 U.S.C.A. § 12102 (1)(C).

62.     Plaintiff Johnson's ADA-qualifying conditions substantially limited her in one or more major life activities, including but not limited to sleeping, reading, concentrating, thinking, and working.  42 U.S.C.A. §12102(2)(A).

63.     At the time of her employment, Plaintiff Johnson was a "qualified individual" as defined under the ADA because she was able to perform the essential functions of the job she held with reasonable accommodation.

64.     Plaintiff Johnson informed Defendant that she required a reasonable accommodation in the form of a modified schedule to alleviate and regulate the symptoms of her anxiety and depression.

65.     Defendant subjected Plaintiff Johnson to unlawful discrimination because of her disability by revoking a reasonable accommodation originally granted to her.

66.     Defendant further perceived that Plaintiff Johnson could not adequately perform her job due to her disability, and based on that erroneous and discriminatory view, subsequently terminated her employment in violation of 42 U.S.C.A. § 12112(a).

67.     As a result of Defendant's disability-based discrimination, Plaintiff Johnson has suffered monetary damages, including but not limited to back pay, front pay, and the loss of benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

68.     Higher-level management officials employed by Defendant acted with malice or reckless indifference to Plaintiff Johnson's federally protected rights under the ADA, and she is therefore entitled to recover punitive damages.

## **COUNT III**

### **Plaintiff Ashley Johnson**

### **(Interference and Retaliation in violation of the FMLA)**

69.     Plaintiff Johnson incorporates by reference all the preceding paragraphs of this complaint, 1–68, as though set forth fully and separately herein.

70.     Plaintiff Johnson was an eligible employee under the FMLA.  29 U.S.C.A. § 2611(2)(A).

71.     Defendant is an employer covered by the FMLA.  29 U.S.C.A. § 2611(4)(A).

72.     Plaintiff Johnson exercised her lawfully protected rights under the FMLA by taking leave for qualified medical conditions, specifically her diagnoses of depression and anxiety.

73.     Defendant interfered with Plaintiff Johnson's lawfully protected rights under the FMLA; and subsequently terminated her for opposing practices made unlawful under the FMLA.  29 U.S.C.A. § 2615(a)(1)-(2).

74.     As a result of Defendant's interference and retaliatory conduct, Plaintiff Johnson has been deprived of wages, health insurance, savings contributions, and other benefits for which she is eligible under company policies. 29 U.S.C.A. § 2617(a)(1)(A)(i)(I).

75.     Plaintiff Johnson is entitled to liquidated damages for Defendant's willful violation of her rights under the FMLA.  29 U.S.C.A. § 2617(a)(1)(A)(iii).

## **COUNT IV**
### **Plaintiff Jill Updike**
### **(Retaliation in violation of the ADA)**

76.     Plaintiff Updike  incorporates by reference all the preceding paragraphs of this complaint, 1–75, as though set forth fully and separately herein.

77.     Plaintiff Updike engaged in protected activity by opposing an act or practice made unlawful under the ADA, i.e., Defendant's retaliatory conduct regarding Plaintiff Johnson; and by facilitating Plaintiff's lawful accommodation under the ADA.

78.     Defendant retaliated against Plaintiff Updike for engaging in protected activity by subjecting her to materially adverse job actions that well might have

dissuaded a reasonable person from making or supporting a charge of discrimination, including but not limited to a failure to follow company policies and protocols regarding the investigative and termination process; and her subsequent forced involuntary resignation, in violation of 42 U.S.C.A. § 12203(a).

79.    As a result of Defendant's retaliatory conduct, Plaintiff Updike has suffered monetary damages, including but not limited to back pay, front pay, and loss of benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

80.    Higher-level management officials employed by Defendant acted with malice or reckless indifference to Plaintiff Updike's federally protected rights under the ADA, and she is therefore entitled to recover punitive damages.

<u>**COUNT V**</u>
**Plaintiff Jill Updike**
**(Retaliation in violation of FMLA)**

81.    Plaintiff Updike  incorporates by reference all the preceding paragraphs of this complaint, 1–80, as though set forth fully and separately herein.

82.    Plaintiff Updike engaged in protected activity by opposing an act or practice made unlawful under the FMLA, i.e., Defendant's retaliatory conduct

regarding Plaintiff Johnson's opposition to practices made unlawful under the FMLA. 29 U.S.C.A. § 2615(a)(2).

83.   Defendant retaliated against Plaintiff Updike for engaging in protected activity by subjecting her to materially adverse job actions that well might have dissuaded a reasonable person from making or supporting a charge of discrimination, including but not limited to a failure to follow company policies and protocols regarding the investigative and termination process; and her subsequent forced involuntary resignation.

84.   As a result of Defendant's retaliatory conduct, Plaintiff Updike has been deprived of wages, health insurance, savings contributions, and other benefits for which she is eligible under company policies. 29 U.S.C.A. § 2617(a)(1)(A)(i)(I).

85.   Plaintiff Updike is entitled to liquidated damages for Defendant's willful violation of her rights under the FMLA. 29 U.S.C.A. § 2617(a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

Wherefore, based on the above stated claims, Plaintiffs demand a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits.

B. Compensatory damages to the extent allowed by law.

C. Punitive damages.

D. Liquidated damages.

E. Attorneys' fees and costs of litigation.

F. Pre-judgment and post-judgment interest at the highest lawful rate, including interest on lost compensation calculated at the prevailing rate.

G. Such other equitable and monetary relief as the court deems just and proper, including reinstatement.

H. A declaratory judgment that Defendant's actions violated Plaintiff Johnson's rights under the ADA and the FMLA, and Plaintiff Updike's rights under the ADA.

Respectfully submitted, the 26th day of April, 2022.

**HKM Employment Attorneys LLP**

_s/Artur Davis_
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

[1] Artur Davis will promptly file for admission _pro hac vice_ as an attorney of record in this action.  Davis is licensed in the state of Alabama and the District of Columbia.

Jermaine "Jay" Walker
GA Bar No. 142044
3355 Lenox Rd. NE Suite 705
Atlanta, GA 30326
jwalker@hkm.com
Direct: 404-301-4020
Attorneys for Plaintiffs